**UNITED STATES of America, Plaintiff–Appellee,**

v.

**William V. TONEY, Defendant– Appellant.**

**No. 93–2809.**

United States Court of Appeals, Seventh Circuit.

Argued March 2, 1994.

Decided June 24, 1994.

Bradley W. Murphy, Asst. U.S. Atty., Peoria, IL, (argued), for plaintiff-appellee.

Rodney R. Nordstrom, Peoria, IL (argued), for defendant-appellant.

Before POSNER, Chief Judge, and CUMMINGS and MANION, Circuit Judges.

MANION, Circuit Judge.

A jury found William Toney guilty of possession of a firearm by a felon, *see* 18 U.S.C. §§ 922(g), 924(a)(2), and the court sentenced him to three hundred and ten months in prison. On appeal, Toney challenges the jury instruction on coercion and the admission under Fed.R.Evid. 609(a) of his two prior convictions. We affirm.

## I. Facts

On August 29, 1992, despondent and possibly contemplating suicide, Julie Shults went alone to the De–Rail's tavern in Galesburg, Illinois. She was soon joined by the defendant, William Toney. Sometime thereafter, an officer of the Galesburg Police Department responded to a disturbance call from a patron at the tavern: a fight had broken out in the parking lot and a gun had been fired. When the officer arrived at the tavern, he saw Toney walking down the street dragging Ms. Shults by the hair. The officer ordered the two to stop, at which point Toney threw Shults down, turned toward the officer with a gun in his hand and aimed the gun at the officer. After a struggle during which Toney tossed the gun into the weeds, Toney was arrested.

At trial, Toney chose to testify in his defense. Toney conceded his possession of the gun but raised the defense of coercion. In his opening statement, the defense attorney told the jury that Toney took the gun to prevent his girlfriend from committing suicide. Toney had followed Shults to the tavern. The two had already consumed a large quantity of alcohol that day and continued to drink heavily at the bar. A verbal altercation between the two ensued. At some point thereafter, Shults expressed her intent to commit suicide and opened her purse to reveal the gun. Toney immediately seized the gun and placed it in his trousers for safety. He then tried to convince Shults to leave. The two fought and Toney forcibly pulled Shults from the tavern. The struggle continued in the parking lot until Toney fired a

single shot in the air. The police officers arrived shortly thereafter.

Toney maintains that he took possession of the gun to prevent Shults from committing suicide and for his own safety during what he describes as a "crisis" situation. His proposed theory of defense instruction included fear for his own safety as well as for others. The district court, however, limited the coercion instruction to prevention of suicide:

> One of the issues in this case is whether the defendant was coerced. A defendant who has been coerced must be found not guilty.
>
> If the defendant committed the offense charged only because he reasonably feared that immediate, serious bodily harm or death would be inflicted upon others if he did not commit the offense, and he had no reasonable opportunity to avoid the injury, then he was coerced.
>
> The burden of proof is on the government to prove beyond a reasonable doubt the absence of coercion.
>
> The fear of suicide of another is not a sufficient basis for coercion, unless the defendant took reasonable alternative steps to avoid the suicide.[1]

Toney cites three errors by the court: (1) by excluding self-defense the court limited his theory of defense to prevention of suicide; (2) the court gave an impermissible "reasonable steps" instruction; and (3) the court admitted into evidence his two prior convictions.

## II. Analysis

*A.*

■ A defense of coercion, or duress as it is sometimes called, requires the establishment of three elements: (1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to avoid the threatened harm. *See United States v. Tanner,* 941 F.2d 574, 587 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1190, 117 L.Ed.2d 432 (1992); *see also United States v. Santos,* 932 F.2d 244, 249 (3d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 592, 116 L.Ed.2d 617 (1991); *United States v. Scott,* 901 F.2d 871, 873 (10th Cir. 1990); *United States v. Charmley,* 764 F.2d 675, 676 (9th Cir.1985). In other words, the defendant must have been under such duress that he had no alternative but to commit the crime in order to avoid the greater harm. As a prerequisite for presenting the defense of coercion to the jury, the defendant must produce sufficient evidence such that a rational jury could infer that he was coerced into committing the crime charged. *Tanner,* 941 F.2d at 587. The defendant does not, however, have to prove coercion. He is entitled to an instruction on the defense so long as he has produced "*some* foundation ... even though such evidence may be weak, insufficient or of doubtful credibility." *Id.* (quoting *United States v. Patrick,* 542 F.2d 381, 386 (7th Cir.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977)) (emphasis added).

■ Once the defendant meets this initial and threshold evidentiary burden he is entitled not only to an instruction on coercion but also a so-called "coercion-negation" instruction:

> The burden of proof is on the government to prove beyond a reasonable doubt the absence of coercion.

The defendant is *presumed* coerced, therefore presumed innocent, unless the government disproves coercion beyond a reasonable doubt. *See Johnson v. United States,* 291 F.2d 150, 158 (8th Cir.), *cert. denied,* 368 U.S. 880, 82 S.Ct. 130, 7 L.Ed.2d 80 (1961) (cited in Federal Jury Instructions for the Seventh Circuit, No. 4.05, pg. 61 (1980)); *cf. United States v. Norton,* 846 F.2d 521, 524–25 (8th Cir.1988) (failure to give negation instruction

---

1. The first three paragraphs of Toney's proposed instruction were the same as those given except Toney's instruction included "himself."

> If the defendant committed the offense charged only because he reasonably feared that immediate, serious bodily harm or death would be inflicted upon *himself or others* if he

did not commit the offense, and he had no reasonable opportunity to avoid the injury, then he was coerced.

(Emphasis added.) His proposed instruction also did not include the last paragraph referring to "reasonable alternative steps to avoid the suicide."

amounts to harmless error where coercion is raised as an *affirmative* defense).

A defendant in a criminal case is entitled to a particular theory of defense if he satisfies four requirements: (1) the defendant proposes a correct statement of the law; (2) the defendant's theory is supported by the evidence; (3) the defendant's theory of defense is not part of the charge; (4) the failure to include an instruction on the defendant's theory of defense would deny the defendant a fair trial. *United States v. Douglas*, 818 F.2d 1317, 1320–21 (7th Cir.1987). Toney tendered an instruction that included two alternatives to the coercion defense, *harm to "him or others,"* meaning self-defense or suicide prevention. The district court determined that the government had not had adequate notice of Toney's intention to use the self-defense component of the coercion instruction. The district court thus limited the evidence to that supporting the suicide defense. Applying the *Douglas* four-prong test to the evidence and legal theories on trial, we conclude that Toney was *not* entitled to have his instruction presented to the jury. While Toney's proposed instruction is a correct statement of the law, *see* Federal Jury Instructions for the Seventh Circuit, No. 4.05 (1980), it is not supported by the evidence. At no point did Toney testify that he took the gun away from Shults to protect himself, nor did defense counsel allude to self-defense in his opening or closing arguments. Accordingly, Toney was entitled only to an instruction limited to harm *to others*.

Toney asserts that the court's refusal to include the self-defense language denied him a fair trial. The issue Toney is really raising, however, is his objection to the district court's evidentiary ruling barring testimony on self-defense. The district court limited the instruction to suicide because at the end of trial the court found that Toney's theory of the case did not include self-defense nor did the evidence support self-defense. This finding, however, was the direct result of the court's evidentiary ruling, made mid-trial, that Toney could not present evidence that he had acted in self-defense because he had not timely notified the govern-

ment of the self-defense component of his defense. When making this ruling, the court stated that if Toney wished to proceed with the self-defense prong of the coercion defense a mistrial would be called. Toney agreed to proceed solely on the suicide prong and to limit the evidence accordingly.

To the extent that Toney now argues that the district court erred in this ruling, he has waived this issue by failing to object at trial. *United States v. Angulo*, 864 F.2d 504, 507 (7th Cir.1988). Moreover, on appeal he neither properly identifies any objection regarding the evidentiary ruling nor supports his argument with the applicable law. *See* Fed. R.App.P. 28(a)(5); *Varhol v. National Railroad Passenger Corp.*, 909 F.2d 1557, 1566 (7th Cir.1990) (claim is waived on appeal when it is not supported by citation to relevant authorities); *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir.1986), *cert. denied*, 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 984 (1987).

In fact, it appears that the district court's ruling may have been in error. The facts surrounding the evidentiary ruling are as follows. During Toney's direct testimony, the judge requested a sidebar to clarify whether the defense was asserting coercion or necessity. Although Toney had filed a Federal Rule 12(b) statement with the court notifying the government that the defendant intended to raise "the defense of necessity, duress or justification," there was no proof that the government had received the statement. Both parties agreed, however, that the defense had notified the government by memorandum of its intention to raise those defenses. The parties had met and discussed the defenses, going so far as to look up jury instructions and find only a single applicable instruction couched in terms of coercion. *See* Federal Jury Instructions of the Seventh Circuit, No. 4.05 (1980) ("harm to him or others"). Nevertheless, the district court concluded that the defense had notified the government only of its "primary defense" of coercion, based on evidence that Toney had acted to prevent Shults' suicide. The court concluded that Toney was then, "in the middle of trial," trying to raise "a second aspect." Specifically, that even if the jury

didn't believe that Toney possessed the gun only to prevent a suicide, they could still find him not guilty on the basis of coercion in that he reasonably feared for his life. The court found that the government had not been fairly notified of this "second aspect," and that if the defendant wished to pursue self-defense a mistrial would be called. After a conference with the government, Toney agreed that he would proceed and would not attempt to make the alternative argument to the jury. Toney waived self-defense, rather than face a mistrial.

■ Toney argues that because the judge erroneously ruled that insufficient notice was given to the government, the question of waiver is moot. We disagree. That an objectionable ruling not preserved for appeal might in fact have been erroneous does not remedy a party's failure to object at trial. Since Toney did not preserve the issue of notification for appellate review and did not make an offer of proof to show that the evidence supported self-defense, we can reverse only if the district court committed plain error. *See* Fed.R.Crim.P. 52(b). Under the plain error doctrine we may correct only "particularly egregious errors," *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1591, 71 L.Ed.2d 816 (1982), those errors that result "in an actual miscarriage of justice such that the defendant probably would have been acquitted but for the erroneously admitted evidence." *United States v. Walker,* 9 F.3d 1245, 1249 (7th Cir.1993); *see also United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936); *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985).

■ The record does not support a finding that the district court's ruling amounted to a "miscarriage of justice." *Frady,* 456 U.S. at 163 n. 14, 102 S.Ct. at 1592 n. 14. Toney possessed the gun too long to support a claim of self-defense. *United States v. Paolello,* 951 F.2d 537 (3d Cir.1991), a factually similar case, is distinguishable because the defendant possessed the gun only for a very brief time while fleeing from a fight. In *Paolello,* the defendant, hearing someone yell "stop," turned around to point the gun at what turned out to be the arresting officers. The

Third Circuit determined that the evidence supported the conclusion that the defendant acted under the reasonable belief that if he left the gun and fled he would be pursued and possibly shot. 951 F.2d at 543; *compare United States v. Singleton,* 902 F.2d 471, 473 (6th Cir.), *cert. denied,* 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990) (justification jury instruction unwarranted because the defendant, who took the gun from a threatening third party, failed to show that he did not maintain possession any longer than absolutely necessary). Here the police were summoned after Toney and Shults exited the bar and he fired the gun. Only when the police arrived did he finally get rid of the gun.

Accordingly, we conclude that the district court correctly refused to give the defendant's proposed instruction; the evidence does not support self-defense.

*B.*

Toney next contends that the jury instruction tendered by the government created a contradictory standard that impermissibly shifted the burden of proof to the defendant. Toney alleges that the last paragraph of the jury instruction, requiring "*reasonable steps,*" unconstitutionally compels the defendant to prove that he took a reasonable alternative step to avoid the suicide prior to taking the gun.

■ Addressing Toney's argument requires us to first determine who has the burden of proving coercion. The Constitution requires the government to prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [the defendant] is charged." *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970); *Mason v. Gramley,* 9 F.3d 1345, 1349 (7th Cir.1993). A jury instruction that shifts the burden to the defendant to disprove an element of the offense is unconstitutional. *See Patterson v. New York,* 432 U.S. 197, 215, 97 S.Ct. 2319, 2329–30, 53 L.Ed.2d 281 (1977). Thus, if a *substantive* defense negates an essential element of a crime, the prosecution must disprove the defense be-

yond a reasonable doubt. *See United States v. Mitchell,* 725 F.2d 832, 835 (2d Cir.1983) (citing *Patterson,* 432 U.S. at 210, 97 S.Ct. at 2327). An affirmative defense, however, is by definition "one which serves as a basis for proving some new fact," *see Barron's Law Dictionary* (2d ed., 1984). Accordingly, the burden is on the defendant to prove the affirmative defense. *See, e.g.,* 18 U.S.C. § 17(b) (1993) (insanity); *Martin v. Ohio,* 480 U.S. 228, 231–33, 107 S.Ct. 1098, 1100–02, 94 L.Ed.2d 267 (1987) (self-defense); *Patterson,* 432 U.S. at 210, 97 S.Ct. at 2327 (extreme emotional distress).

■ Whether coercion is an affirmative or substantive defense depends on the level of *mens rea* required for the crime charged. Where coercion is raised as a defense to a specific intent crime, the willfulness and deliberate intention to disregard the law required for a showing of specific intent does not exist if the defendant acted under duress or coercion. *See Mitchell,* 725 F.2d at 835. Thus, as a defense to a specific intent crime coercion is a substantive defense and proof of the absence of coercion becomes an essential element of the crime. For instance, in *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980), the Supreme Court held that proof of escape under 18 U.S.C. § 751(a) did not require the prosecution to prove specific intent, only that the escapee knew that his actions would result in his leaving confinement without permission. 444 U.S. at 408, 100 S.Ct. at 633–34. An intent to avoid confinement was not required. Accordingly, the Court referred to coercion as an affirmative defense. 444 U.S. at 411, 100 S.Ct. at 635. Similarly, in *United States v. Stevison,* 471 F.2d 143 (7th Cir.1972), *cert. denied,* 411 U.S. 950, 93 S.Ct. 1933, 36 L.Ed.2d 411 (1973), where coercion was raised as a defense to misapplication of federally insured bank funds in violation of 18 U.S.C. § 653, a crime requiring only a showing of "reckless disregard," coercion was an affirmative defense. 471 F.2d at 145, 147. *See also Smith v. Kelso,* 863 F.2d 1564, 1569 and n. 6 (11th Cir.) (coercion is an affirmative defense to false imprisonment, and thus, felony murder, where underlying felony is false imprisonment), *cert. denied,* 490 U.S. 1072, 109 S.Ct. 2079, 104 L.Ed.2d 644 (1989); *Rod-*

*riguez v. Scully,* 788 F.2d 62, 63–64 (2d Cir. 1986) (coercion is an affirmative defense to robbery, burden of proof is on defendant). In comparison, in *United States v. Lee,* 846 F.2d 531 (9th Cir.1988), the defendants raised coercion as a defense to a charge of bribery of public officials, 18 U.S.C. §§ 201(b) and 371, a specific intent crime. 846 F.2d at 534. Coercion, thus, went to the substance of the charged crime; the specific intent required was negated by the defendants' "fears that they would lose their contract with the government if they did not pay off government inspectors." *Id.* The burden of disproving coercion was on the government. *Id.,* at 535; *accord United States v. Falcon,* 766 F.2d 1469, 1477 (10th Cir.1985) (government has burden of disproving coercion as a substantive defense to extortion in violation of 18 U.S.C. §§ 894, 1952, 371).

■ This circuit has not addressed the mental state required for conviction under 18 U.S.C. § 922(g)(1). *But see, United States v. Reed,* 991 F.2d 399, 401 (7th Cir.1993) (conviction under 26 U.S.C. § 5861(d), (i) does not require specific intent). The circuits that have, the Third, Fourth and Sixth, hold that specific intent is not required. *See United States v. Williams,* 892 F.2d 296, 303 (3d Cir.1989), *cert. denied,* 496 U.S. 939, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990); *United States v. Weiler,* 458 F.2d 474 (3d Cir.1972); *United States v. Santiesteban,* 825 F.2d 779, 782 (4th Cir.1987); *United States v. Bennett,* 975 F.2d 305, 308 (6th Cir.1992); *United States v. Hatfield,* 815 F.2d 1068, 1072 (6th Cir.1987); *see also United States v. Minnick,* 949 F.2d 8, 10 (1st Cir.1991) (leaving level of scienter required for conviction under § 922(g)(1) undecided), *cert. denied,* —— U.S. ——, 112 S.Ct. 1698, 118 L.Ed.2d 408 (1992). In these circuits, as a defense to § 922(g)(1), coercion would be an affirmative defense, upon which the defendant bears the burden of proof. In *Paolello,* the Third Circuit reversed and remanded for a new trial when it found that the defendant had offered sufficient evidence in support of his justification defense to warrant a jury instruction. However, the court declined to comment on who had the burden of proof on the defense of justification. 951 F.2d at 544. We need not

determine the level of intent required for conviction under § 922(g)(1) at this time because even if specific intent is required any shifting of the burden caused by the *reasonable steps* instruction was harmless. We do note that the jury was instructed that the defendant must have *"knowingly* possessed a firearm." *See* 18 U.S.C. § 924(a)(1)(B) (violation of § 922(g) must be done "knowingly"); *see also United States v. Sherbondy,* 865 F.2d 996, 1002–03 (9th Cir.1988) (unknowing act cannot constitute a violation of § 922(g), however, knowledge of law is not an element of a § 922(g) offense).

The defendant pleading a substantive defense has only a preliminary burden of introducing evidence sufficient to convince the judge that a defense instruction is warranted. *Patrick,* 542 F.2d at 386. Once the judge determines that the defendant has met this preliminary burden and an instruction is warranted, the government must disprove the defense. *Id.; cf. United States v. Starnes,* 14 F.3d 1207, 1212 (7th Cir.1994) (entrapment). The jury cannot find the defendant guilty unless it finds beyond a reasonable doubt that the defendant was not the victim of coercion, or entrapment.

To meet the preliminary burden with regard to coercion, as a substantive defense, the defendant must provide the judge with evidence suggesting that he reasonably feared that immediate and serious bodily harm or death would befall another if he did not perform the illegal act, for which he is presently charged. He must also provide evidence demonstrating that he had no reasonable opportunity to avoid the injury other than taking the illegal act, i.e. that no reasonable alternative steps were available. *Tanner,* 941 F.2d at 587; *Patrick,* 542 F.2d at 386–87.

Once the defendant has made a preliminary showing and the judge has found that a coercion instruction is warranted, the burden switches to the government to prove the absence of coercion. The government may do so by disproving beyond a reasonable doubt any of the elements of coercion. For instance, the government may prove that the defendant's fear was unreasonable, or that the defendant's perception of the harm as serious or deadly was false. The government may also disprove coercion by proving that the defendant had a reasonable opportunity to avoid the offense. This is the problem with the "reasonable step" portion of the instruction (which was not included in Toney's proposed instruction). This paragraph instructs the jury that, in the circumstances of suicide, coercion is not an available defense "unless the defendant took reasonable alternative steps to avoid the suicide." However, it is probably not helpful for the government or the defendant to prove that the defendant took the required reasonable alternative.

As already stated, the government could prove the absence of coercion by first proving that a reasonable alternative was available to the defendant but that he did not at least attempt the alternative. Or, the government could choose to prove the absence of coercion by proving that the defendant's fear or perception of serious bodily harm was unreasonable. Under this instruction, even if the government was unsuccessful in proving unreasonable fear of bodily harm, the jury could still find the defendant guilty because the jury would not find proof that the defendant took a reasonable alternative step to avoid the suicide. Of course, the defendant could show that no alternative step was available, but arguably that could shift part of the burden of proof to the defendant.

The "reasonable step" language in the instruction is based on the committee comment to pattern jury instruction No. 4.05, which in turn is based on this court's decision in *Stevison, supra,* 471 F.2d at 145. *See* Federal Criminal Jury Instructions of the Seventh Circuit, No. 4.05, pg. 61 (1980). The issue in *Stevison* was whether the defendant who was charged with embezzlement had met her preliminary burden so as to warrant a coercion instruction. The court denied the defendant a coercion instruction because she had not alleged that she had no opportunity, other than embezzling funds, to avoid the threatened suicide, i.e., she failed to offer any evidence showing that the immediacy of her daughter's suicide precluded any reasonable alternative steps other than embezzling funds. *Stevison* did *not* establish a special

suicide rule requiring the defendant to prove that she in fact took alternative steps.

By itself, the "reasonable step" paragraph of the jury instruction does blur the proper presumption, that the defendant had no reasonable opportunity to avoid the injury. However, we believe that in this case any confusion that might have arisen was eliminated by the addition of the coercion-negation instruction requiring the government to prove beyond a reasonable doubt the absence of coercion. The coercion-negation paragraph of the instruction does not merely contradict, rather it explains, the reasonable step paragraph. If a reasonable alternative step were available the government would have to prove the defendant did not take it. Thus, it suffices to absolve any infirmity that the reasonable step paragraph may have possessed,[2] *see Francis v. Franklin,* 471 U.S. 307, 322, 105 S.Ct. 1965, 1975, 85 L.Ed.2d 344 (1985). Accordingly, reversal on this ground is not warranted. The instructions, viewed in their entirety, treat the issues fairly and adequately. *United States v. Rice,* 995 F.2d 719, 725 (7th Cir.1993).

We do stress, however, that the committee comment to 4.05 speaks to the preliminary judicial determination of whether a coercion instruction is warranted. It does not apply to the jury's deliberations, and should not be used to instruct the jury. Additionally, we note that, contrary to the committee comment, the burden of proof to prove beyond a reasonable doubt the absence of coercion is on the government only when coercion is raised as a substantive defense.

*C.*

■ Toney's final contention is that the trial court abused its discretion in permitting the prosecution to cross-examine him about his two prior felony convictions, a burglary conviction in 1986 and an aggravated battery conviction in 1983. *See* Fed.R.Evid. 609(a)(1) (for the purpose of attacking a defendant's credibility, evidence that an accused has been convicted of a felony "shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused").

Toney stipulated to his prior felony convictions, an element that the government would otherwise have had to prove to obtain a conviction under § 922(g). The district court analyzed the impeachment value of the evidence versus its prejudicial effect under *United States v. Mahone,* 537 F.2d 922, 928–29 (7th Cir.), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976). The court found that the impeachment value regarding the defendant's credibility was material. The defendant was the only witness able to testify as to his state of mind and his motive for taking the gun from Shults. Both of the prior convictions were somewhat remote in time to the present charge, the aggravated battery occurring in 1983 and the burglary in 1986. There was no similarity between the prior burglary conviction and the present possession charge; however, there was "some similarity" between the prior aggravated battery conviction and the facts surrounding the possession charge. The defendant's testimony was of utmost importance due to the nature of the coercion defense, which turned on his mental state. His testimony was crucial because the case was controlled by what the jury determined to be the defendant's state of mind, his motivation for possessing the gun, and certainly his credibility. *See also United States v. Rein,* 848 F.2d 777, 781 (7th Cir.1988).

■ We do not find the admission of Toney's prior convictions to be an abuse of discretion. *United States v. Lofton,* 957 F.2d 476, 477 (7th Cir.1992). Use of prior convictions to impeach the defendant is not novel in § 922(g) trials. Although Toney stipulated to his prior conviction of a felony, an element that the government would otherwise have to prove, Toney has put his credibility in issue by testifying. The jury has a right under the law to hear that any witness, whether it is the defendant or not, has a felony record that is or can be considered to be impeaching. *See United States v. Nururdin,* 8 F.3d 1187, 1191–92 (7th Cir.1993), *cert. denied,* —— U.S.

---

**2.** We use the word *may* because any constitutional infirmity that the reasonable step paragraph may have imposed hinges on whether or not the government has the burden of proving the absence of coercion as a defense to § 922(g), a question we decline to address at this time.

**1254**

——, 114 S.Ct. 1328, 127 L.Ed.2d 676 (1994). The danger of admitting evidence of a defendant's prior conviction for a similar offense is that the "jury will regard past convictions of similar crimes as evidence of ... a willingness to commit the crime charged." *Rein,* 848 F.2d at 783 (quoting *United States v. Fountain,* 642 F.2d 1083, 1091 (7th Cir.), *cert. denied,* 451 U.S. 993, 101 S.Ct. 2335, 68 L.Ed.2d 854 (1981)). Evidence that Toney had previously been convicted of aggravated battery could not have prejudiced the jury's determination because their inquiry was limited to determining Toney's *motivation* for possessing the gun on that day in the tavern. Accordingly, any prejudice was clearly outweighed by the probative value in assessing Toney's credibility, the central issue in this case.

AFFIRMED.