**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Marcos PEREZ, Defendant–Appellant.**

No. 95–3814.

United States Court of Appeals, Seventh Circuit.

Argued April 24, 1996.

Decided June 20, 1996.

Barry Rand Elden, Chief of Appeals, Duane Deskins (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff-Appellee.

Alexander M. Salerno (argued), Berwyn, IL, for Defendant-Appellant.

Before POSNER, Chief Judge, and COFFEY and RIPPLE, Circuit Judges.

POSNER, Chief Judge.

■ The defendant was convicted of being a felon in possession of a firearm, 18 U.S.C. § 922(g), and was sentenced to 51 months in prison. The judge refused to instruct the jury on the defenses of necessity and duress, and the defendant complains that this was error. A criminal defendant is entitled to an instruction on any defense for which there is some support in the evidence; but how much there must be is unclear. A number of our cases say that as long as there is any evidence to support the defense, even if the evidence is "weak"—even if it is "insufficient"—the defendant is entitled to an instruction. E.g., *United States v. Toney,* 27 F.3d 1245, 1248 (7th Cir.1994); *United States v. Tanner,* 941 F.2d 574, 587 (7th Cir.1991).

But the Supreme Court has made clear that the evidence must be sufficient to allow a reasonable jury to find the defense proved. *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 886–87, 99 L.Ed.2d 54 (1988); see also *United States v. Woody,* 55 F.3d 1257, 1271 (7th Cir.1995). This formulation is not only authoritative, by virtue of its endorsement by the Supreme Court; it is correct. An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant. *United States v. Kerley,* 838 F.2d 932, 938 (7th Cir.1988); *United States v. Sepulveda,* 15 F.3d 1161, 1190 (1st Cir.1993).

■ This happens to be a no-evidence case. Even if every factual contention of the defendant is accepted, he has failed, like the defendants in *United States v. Bailey,* 444 U.S. 394, 415–16, 100 S.Ct. 624, 637–38, 62 L.Ed.2d 575 (1980), to establish the defense of necessity—or duress, or self-defense. All these are closely related defenses, *United States v. Talbott,* 78 F.3d 1183, 1186 n. 2 (7th Cir.1996) (per curiam), because all—nowadays often lumped together under the rubric "justification"—are based on the idea that behavior that ordinarily is criminal is justifiable if necessary to prevent a greater wrong.

Perez's felony, conviction of which deprived him of the right to possess a gun, was for drug offenses, and he was suspected of having resumed the drug trade after his release from prison. The DEA decided to conduct a surveillance of Perez. Three agents, in two unmarked cars, watched his apartment from various vantage points in the street and alley next to the apartment building. Perez saw them from the window of his apartment one afternoon and he contends— and we shall assume that every one of his factual contentions is correct—that he thought they were crooks planning to rob him. As it happened, he wanted to go to the bank that afternoon and deposit $600 in cash and checks. Fearful of being robbed when he left the apartment and got into his car, Perez took his girlfriend's pistol from the

bedroom dresser of the apartment (which they shared) and slipped it into his waistband before leaving. The agents had just learned that there was an outstanding warrant for Perez's arrest, so when they saw him get into his Cadillac and start to drive off they arrested him. He admitted to them that he had a gun on him.

Even crediting fully Perez's assertion that he genuinely believed the men in the cars would try to rob him when he left the apartment, he has not come close to satisfying the elements of the defense of necessity. If ex-felons who feel endangered can carry guns, felon-in-possession laws will be dead letters. Upon release from prison most felons return to their accustomed haunts. Even those who go straight will in all likelihood continue to live in dangerous neighborhoods and consort with some dangerous people. Many of them will not go straight, but will return to dangerous activities such as the drug trade. Every drug dealer has a well-grounded fear of being robbed or assaulted, so that if Perez's defense were accepted felon-in-possession laws would as a practical matter not apply to drug dealers. Cf. *United States v. Gresso,* 24 F.3d 879, 881–82 (7th Cir.1994); *United States v. Gometz,* 879 F.2d 256, 259–60 (7th Cir.1989).

 The defense of necessity will rarely lie in a felon-in-possession case unless the ex-felon, not being engaged in criminal activity, does nothing more than grab a gun with which he or another is being threatened (the other might be the possessor of the gun, threatening suicide). E.g., *United States v. Toney, supra,* 27 F.3d at 1248; *United States v. Newcomb,* 6 F.3d 1129 (6th Cir.1993); *United States v. Paolello,* 951 F.2d 537, 542–43 (3d Cir.1991). Rarely does not mean never; for a pertinent illustration, see United States v. Panter, 688 F.2d 268, 271–72 (5th Cir.1982). But only in the most extraordinary circumstances, illustrated by *United States v. Gomez,* 81 F.3d 846 (9th Cir.1996), where the defendant had sought protection from the authorities without success, will the defense entitle the ex-felon to arm himself in advance of the crisis merely because he fears, however sincerely and reasonably, that he is in serious danger of deadly harm.

More often than not the basis of his fear will be his own involvement in illegal activities; and when the danger that gives rise to the fear results from engaging in such activities—from "looking for trouble"—the defense is barred. E.g., *United States v. Wheeler,* 800 F.2d 100, 107 (7th Cir.1986), overruled on other grounds by *United States v. Splendorio,* 830 F.2d 1382, 1393 (7th Cir.1987); *United States v. Paolello, supra,* 951 F.2d at 541.

 That is one limiting principle and another is that the defendant may not resort to criminal activity to protect himself or another if he has a legal means of averting the harm. *United States v. Bailey, supra,* 444 U.S. at 410, 100 S.Ct. at 634–35; *United States v. Talbott, supra,* 78 F.3d at 1188; *United States v. Schulte,* 7 F.3d 698, 700–01 (7th Cir.1993). Perez didn't *have* to go to the bank that afternoon. He could have remained in his apartment, where he felt safe, while calling the police and asking them to check out the suspicious-looking cars outside. Cf. *United States v. Elder,* 16 F.3d 733, 738 (7th Cir.1994).

AFFIRMED.